## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

PERCY TAYLOR                                    CIVIL ACTION

VERSUS

JAMES LEBLANC, ET AL.                    NO. 21-00072-BAJ-EWD

### RULING AND ORDER

Before the Court is Defendants' **Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted (Doc. 3)**. Plaintiff amended his Complaint in response to the Motion to Dismiss, (Doc. 4), and subsequently filed an opposition. (Doc. 5). Defendants filed a reply. (Doc. 6).

For the reasons provided, Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A. Facts

For present purposes, the following facts are accepted as true:

On December 14, 1995, Plaintiff Percy Taylor pleaded guilty to a felony drug offense and was sentenced to ten years in prison. (Doc. 4-1, p. 2). On December 9, 2000, Plaintiff was released "onto good time parole supervision." (*Id.*). On July 16, 2001, while on parole, Plaintiff committed a new felony offense. (*Id.*); *See also State v. Taylor*, 05-280, p. 3 (La. App. 5 Cir. 12/27/05); 920 So. 2d 287, 290. The relevant provisions of Louisiana law at the time of the offense required automatic

1

revocation of Plaintiff's parole, yet Plaintiff was not arrested for this conduct until February 20, 2002. (Doc. 4-1, p. 4). Even after his arrest there is no indication that a detainer was filed for Plaintiff's parole revocation, nor was he ever shown as having been in custody on the parole revocation simultaneously with the new felony offense. (*Id.*). Instead, Plaintiff was not informed that his parole was revoked until October 15, 2003—a year and a half after the new offense was committed. (*Id.* at 2).

Plaintiff remained in custody from February 20, 2002 until October 15, 2003, when he pleaded guilty to the new offense. (*Id.*). He was initially adjudicated as a habitual offender and sentenced to life in prison. (*Id.*). However, the sentence was amended on June 14, 2006 to twenty-years hard labor, "giving Defendant credit for all time served." (Doc. 4-1, p. 2). Plaintiff alleges that, as such, his sentence actually commenced on February 20, 2002.

Plaintiff further alleges that on October 27, 2017, his "rap sheet" indicated that his "full time" release date was March 16, 2021, and his adjusted good time date was May 5, 2020. (Doc. 4 at ¶ 11). He asserts that his in-custody start date was allegedly incorrectly calculated in that it did not include credit for the 602 days he spent in pretrial detention. (*Id.*). Plaintiff alleges that he met with Defendant Robin Milligan "seven to ten times" in an effort to convince her to correct this error, but that she failed to review Plaintiff's documentation or the applicable law. (Doc. 4 at ¶¶ 15–18). Plaintiff also met with Defendant Tim Hooper, a warden at Elayn Hunt Correctional Center, to address the miscalculation. Hooper, allegedly relying on Milligan's conclusion, also refused to review Plaintiff's documents. (*Id.* at ¶ 19).

On May 23, 2018, Plaintiff filed an administrative remedy procedure ("ARP") asserting that "he was not being allowed 18 months of parole credit, which was causing him to be held past his release date, which should have been the last of October 2017 and no later than January 1, 2018." (*Id.* at ¶ 20). The ARP was denied by Milligan and signed by Hooper on July 9, 2018. (*Id.* at ¶ 21). Milligan stated that "[i]n regards to you missing 18 months or [sic] parole credit ACT 792[1] street credit wasn't effective until 8/15/2010." (Doc. 4-1, p. 3).

Plaintiff appealed and a "2nd Step"[2] was issued on August 30, 2018, affirming Milligan's determination. (*Id.* at ¶ 34). Plaintiff appealed the decision to the 19th Judicial District Court for East Baton Rouge Parish, Louisiana ("19th JDC"). (*Id.*). On November 25, 2019, the Commissioner[3] issued a Recommendation that judicial review of Plaintiff's petition be granted, that the calculation of the Department of Corrections be reversed, and that the 19th JDC find that Plaintiff was improperly

---

[1] "Prior to Acts 2010, No. 792, § 1, La. R.S. 15:571.5 and La. R.S. 15:574.9 did not authorize the reduction of time served on parole due to good conduct. By Act 2010, No. 792, § 1, effective August 15, 2010, the Legislature changed the law to allow credit for time served for good behavior while on parole." *Black v. LeBlanc*, 2016-0116, p. 2 (La. App. 1 Cir. 9/16/16). This statute is inapplicable to Plaintiff's situation because he pursued credit for time while in pretrial detention, not parole.

[2] Under Louisiana law, incarcerated individuals must exhaust a two-step ARP before proceeding with a suit in federal or state court. *Collins v. Vannoy*, 2014-0675, p. 3 (La. App. 1 Cir. 1/15/15); 169 So. 3d 405, 406. When an inmate has initiated the first step of an ARP, the warden is required to respond using the first step response. LAC 22:I.325J(1)(a)(ii). An inmate who is not satisfied with the warden's first step response may proceed to the second step of the ARP and appeal to the secretary of Louisiana Department of Public Safety and Corrections. LAC 22:I.325J(1)(b)(ii).

[3] "The office of the Commissioner of the Nineteenth Judicial District Court was created by La. R.S. 13:711 to hear and recommend disposition of criminal and civil proceedings arising out of the incarceration of state prisoners." *Anderson v. La. Dep't Pub. Safety & Corrs.*, 2017-0987, p. 3 (La. App. 1 Cir. 2/7/18); 242 So. 3d 614, 616.

denied credit for the 602 days he was in custody between his arrest and conviction. (*Id.* at ¶ 37); (Doc. 4-1). The Commissioner found that Defendants misunderstood Plaintiff's request and noted that, in his appeal to prison officials, Plaintiff was specifically challenging the failure to award jail credits for the time he spent in custody between February 20, 2002 and October 15, 2003, rather than credit for time served for good behavior while on parole, "also known as 'street credits.'" (Doc. 4-1, p. 3).

At the time of Plaintiff's detention, Louisiana law provided that "a defendant shall receive credit toward service of his sentence for the time spent in actual custody prior to the imposition of sentence." La. C.Cr.P. art 880. While there is currently a prohibition against overlapping jail credits, this prohibition was not implemented until August 15, 2006—well after Defendant was sentenced. *Id.* Therefore, the Commissioner recommended that Plaintiff be "given credit for time served . . . beginning February 20, 2002 when he was arrested on the new felony offense." (*Id.* at p. 6). This recommendation was adopted by the 19th JDC on January 13, 2020. (Doc. 4-2) ("**IT IS FURTHER ORDERED, ADJUDGED, and DECREED** that the Petitioner's master prison record shall be recalculated to show the Petitioner is given credit for time served in both docket numbers . . . from February 20, 2002.").

Plaintiff asserts that after the Commissioner's Recommendation was issued, he personally delivered copies of the report to both Milligan and Hooper, both of whom allegedly refused to abide by the order. (Doc. 4 at ¶ 38–39). Following the issuance of the 19th JDC's ruling adopting the Commissioner's Recommendation, Plaintiff also

4

allegedly again delivered copies to Hooper and Milligan, who again refused to comply with it. (*Id.* at ¶ 48–50). After two weeks, Plaintiff filed another ARP. (*Id.* at ¶ 51). On February 18, 2020, Plaintiff was finally released from custody. (*Id.* at ¶ 3).

### B. Procedural History

On December 11, 2020, Plaintiff filed suit under 42 U.S.C. § 1983 and Louisiana state law against James LeBlanc, individually and in his official capacity as the Louisiana Department of Public Safety and Corrections ("DPSC") Secretary; Timothy Hooper, individually and in his official capacity "as the policy maker and Warden of Elayn Hunt Correctional Center ['EHCC']"; and Robin Milligan, individually. Plaintiff alleges that he was "deprived of his liberty for an extended period of time" due to Defendants' unwillingness to properly credit him for time spent in custody prior to his sentencing. (Doc. 4 at ¶ 109).

Defendants assert that all of Plaintiff's claims should be dismissed because each is entitled to qualified immunity. (Doc. 3 at ¶ 4–5). Defendants also contend that all Plaintiff's Louisiana state law claims are prescribed. (*Id.* at ¶ 6). Defendants also assert that, to the extent DPSC is sued under § 1983, such claims must be dismissed for failure to state a claim. (*Id.* at ¶ 3).

## II.   LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

## III.  ANALYSIS

Defendants advance three grounds for dismissal of Plaintiff's claims. First, that Plaintiff's state law claims are prescribed. (Doc. 6, p. 3). Second, that Plaintiff's official capacity federal claims must be dismissed because they are, in effect, claims against DPSC and EHCC, and that both agencies are shielded by Eleventh Amendment immunity. (Doc. 6, p. 1). Third, that Plaintiff's individual capacity federal claims against LeBlanc, Hooper, and Milligan fail because the Defendants are entitled to qualified immunity. (Doc. 6, p. 6).

### A. Louisiana State Law Claims

The prescriptive period for most tort actions under Louisiana law is one year. *See* La. C.C. art. 3492. For a claim for false imprisonment under Louisiana law, "prescription commences to run from the day injury or damage is sustained"—which, in this case, is the date Plaintiff should have been released. *Eaglin v. Eunice Police Dept.*, 2017-1875, *6; 319 So. 3d 225, 229 (La. 2018). Plaintiff's Complaint alleges that he should have been released "no later than January 1, 2018." (Doc. 4 at ¶ 4). As such, unless otherwise tolled, Plaintiff's state law claims were prescribed as of January 1, 2019.

In the alternative, Plaintiff argues that "the lawsuit could not be filed until administrative remedies were exhausted through the appeal to the 19th Judicial District Court." (*Id.*). Defendants assert that even if the filing of an ARP tolled the prescriptive period, that process ended when the final agency decision was delivered. (Doc. 6, p. 4). While Plaintiff's Complaint is also not clear as to when the final decision was issued, it must be presumed that the final administrative decision was issued at some point before the Commissioner's November 25, 2019 Recommendation, which would still render Plaintiff's claims prescribed. (*Id.*).[4]

---

[4] La. R.S. § 15:1172 provides that the prescriptive period for an injury arising out of the claims asserted by a prisoner in a Complaint or ARP is tolled between the filing of the Complaint or grievance until the final agency decision is delivered. Because Plaintiff's Complaint does not indicate when the final agency decision was delivered, the Court is unable to conduct a precise tolling calculation. However, even assuming that the prescriptive period was suspended during the entirety of Plaintiff's appeals process, Plaintiff's suit is prescribed. One-hundred and forty-two days passed between January 1, 2018 (when the prescriptive period commenced) and May 23, 2018 (when Plaintiff filed the first step of his ARP). Assuming the accrual of prescription commenced again on January 13, 2020 (the date the

7

Because Plaintiff failed to file suit within the applicable prescriptive period, Defendants' Motion to Dismiss is **GRANTED**, as to Plaintiff's state law claims. Plaintiff's state law claims are dismissed with prejudice.

### B. Official Capacity Claims

Plaintiff's official capacity federal claims seek money damages against LeBlanc and Hooper in their roles as DPSC Secretary and EHCC Warden. These claims are, in effect, direct claims against DPSC and EHCC. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989) ("Obviously, state officials literally are persons. But a suit against a state official in his or her official capacity is not a suit against the official, but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); *see also Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (claims against persons in their official capacities are treated as municipal liability claims against the entity). DPSC and EHCC are each agencies of the State of Louisiana and are, therefore, entitled to Eleventh Amendment immunity against "suits for both money damages and injunctive relief unless the state has waived its immunity." *Cozzo v. Tangipahoa Parish Council-President Government*, 279 F.3d 273, 281 (5th Cir. 2002).

The U.S. Court of Appeals for the Fifth Circuit has concluded that "[s]ection 1983 does not abrogate Eleventh Amendment immunity; and Louisiana has not waived it." *Champagne v. Jefferson Parish Sheriff's Office*, 188 F.3d 312, 313 (5th Cir. 1999) (per curium). Accordingly, Plaintiff's official capacity claims must be

---

19th JDC accepted the Recommendation of the Commissioner), Plaintiff had 223 days—until August 23, 2020—to file suit. Plaintiff filed suit on December 11, 2020. (Doc. 1).

8

dismissed as barred by the Eleventh Amendment.

## C. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights, and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)). The Supreme Court has held that courts have the discretion to determine which prong of qualified immunity should be analyzed first. *Pearson*, 555 U.S. at 236.

At the Rule 12(b)(6) stage, "a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) (citations omitted). Failure to provide these specific facts warrants dismissal.

### i. Whether LeBlanc, Hooper and Milligan Violated a Clearly Established Right

It is undisputed that Plaintiff sufficiently alleges a violation of his plainly established constitutional right to timely release. The Fifth Circuit has addressed

9

this issue repeatedly. Most recently, this Court summarized the right as follows:

> In *Porter v. Epps*, [the Fifth Circuit] held that there is a clearly established right to timely release from prison. The *Porter* court reviewed previous Fifth Circuit cases on the issue, including the 1968 case *Whirl v. Kern*, where it held that a jailer "is most certainly under an obligation, often statutory, to carry out the functions of his office. Those functions include not only the duty to protect a prisoner, but also the duty to effect his timely release."

*Crittindon v. Gusman*, No. 17-cv-512, 2020 WL 1862467, at *18 (M.D. La. Apr. 13, 2020) (Dick, C.J.) (footnotes omitted). Plaintiff's allegations overcome the first prong of the qualified immunity analysis.

### ii. Whether Defendants' Conduct Was Objectively Unreasonable

Next, the Court must address whether, in light of the clearly established right to be timely released from prison, each Defendant acted in an objectively unreasonable manner.

### a. Supervisory Liability

Plaintiff's § 1983 claim against LeBlanc is predicated on: (1) LeBlanc's alleged failure to promulgate adequate policies "to prevent the unlawful over detention of persons being in [DPSC] 'sentenced' custody," despite being "personally [] on notice of flawed procedures pertaining to sentenced computations," (Doc. 4 at ¶¶ 62, 68) and, (2) LeBlanc's failure "to train or supervise" the employees responsible for calculating Plaintiff's release date, including Hooper and Miller. (Doc. 4 at ¶¶ 35, 68, 84). Similarly, Plaintiff alleges that Hooper, as warden of EHCC, (1) "initiated few, if any written, published policies, regulations, or written guidance regarding the measures to be taken by his office to ensure the timely release of inmates held in the custody of

the EHCC . . . and that qualified persons are overseeing and effectuating the timely release of inmates," and (2) failed to train or supervise Milligan. (*Id.* at ¶¶ 9, 26).

"In order to establish supervisory liability for constitutional violations committed by subordinate employees, plaintiffs must show that the supervisor act[ed], or fail[ed] to act, with deliberate indifference to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446. "A failure to adopt a policy can be deliberately indifferent when it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Id.* (quoting *Rhyne v. Henderson Cnty.*, 973 F.2d 386, 392 (5th Cir. 1992)). A supervisor may also be liable for failure to supervise or train if: "'(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.'" *Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his actions." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quotation omitted). "To establish that a state actor disregarded a known or obvious consequence of his actions, there must be 'actual or constructive notice' 'that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights' and the actor nevertheless 'choose[s] to retain that program.'" *Porter*, 669 F.3d at 447 (quoting *Connick*, 563 U.S. at 61). "A pattern of similar constitutional violations by untrained

11

employees is ordinarily necessary to demonstrate deliberate indifference, because without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* (internal quotation marks omitted).

Taking as true the allegations as pleaded in the Complaint, the Court finds that Plaintiff has alleged facts sufficient to overcome LeBlanc's assertions of qualified immunity based on supervisory liability at the pleadings stage, but not with respect to Hooper's similar assertions.

While Plaintiff does not allege any facts that indicate that LeBlanc was personally involved in Plaintiff's unlawful detention, Plaintiff adequately alleges that LeBlanc was aware of a pattern of similar constitutional violations but failed to correct them. Plaintiff's complaint alleges that the Louisiana Legislative Auditor released a report that found that DPSC "does not have any policies, procedures, manuals, or agency-wide guidance that details the correct ways to calculate release dates." (Doc. 4 at ¶ 57). Plaintiff also cites to the "'Lean Six Sigma 2012 Pre-Classification' study," which allegedly found that DPSC unlawfully over-detained 2252 inmates per year annually, "with prisoners being held beyond their release date for an average of 71 days." (*Id.* at ¶ 70). Plaintiff also cites to *Crittindon v. Gusman*, a recent case from this Court which addressed unlawful detention within DPSC. *See* 2020 WL 1862467 (M.D. La. Apr. 13, 2020) (Dick, C.J.). In that case, a representative of DPSC testified in a deposition that the agency "was aware of the issue with over-

detention and immediate releases, and that the problem continued even after changes were put in place following the [Lean Six Sigma] Study." *Id.* at *11. Plaintiff additionally cites to nine other individuals who brought cases against the DPSC alleging unlawful detention, all of which served as sufficient notice to LeBlanc that unlawful detention was an issue that required his managerial attention. (Doc. 4 at ¶ 74).

Defendants argue that these incidents of unlawful detention are not "similar" to Plaintiff's because the facts are not identical. (Doc. 3-1, p. 15). However, Plaintiff has sufficiently alleged that his unlawful detention and the patterns of unlawful detention in DPSC stem from the same source—inadequate training and guidance. In essence, Plaintiff alleges that LeBlanc's failure to adopt policies to correct DPSC's unlawful detention problem constitutes deliberate indifference to Plaintiff's constitutional right to timely release. This allegation, and the evidence Plaintiff has identified to support it, is sufficient to overcome the qualified immunity defense at the 12(b)(6) stage of these proceedings.

However, with regard to supervisory liability for Hooper, Plaintiff has not alleged a pattern of constitutional violations stemming from Hooper's failure to train employees at EHCC. Unlike Secretary LeBlanc, who has supervised the entirety of DPSC for several years, Hooper is the warden of one facility in the system. Plaintiff has not alleged that other inmates at EHCC were unlawfully detained because Hooper failed to promulgate policies or guidance, or that Hooper is responsible for the lack of training that led to other similar constitutional violations. Accordingly,

Defendant's Motion to Dismiss is **GRANTED** as to Hooper's defense of qualified immunity for supervisory liability, but **DENIED** as to LeBlanc's.

### b. Miscalculation of Plaintiff's Sentence

Plaintiff alleges that each Defendant's failure to properly calculate his sentence was objectively unreasonable. He also asserts that "it was unreasonable to have lay persons . . . calculate release dates." (Doc. 5, p. 10). Plaintiff also asserts that it was "unreasonable to have both a decision from the Commissioner explaining the error and a ruling from a state court judge adopting the finding against a steadfast refusal to consider the release." (Doc. 5, p. 10).

Defendants counter that they "are entitled to qualified immunity from the claim that they negligently detained [Plaintiff] past his original release date." (Doc. 6, p. 6). Defendants assert that negligence cannot support a § 1983 claim, and that Plaintiff has only alleged negligent acts. (*Id.* (citing *Miller v. Kleberg Cty. Tex.*, No. 2:14-CV-00181, 2014 WL 4161576, at * 3 (S.D. Tex. Aug. 19, 2014)). Defendants also contend that there is no "constitutional right to have an attorney perform his sentence calculation." (*Id.* at p. 7).

As previously noted, there is no indication that LeBlanc had any direct knowledge that Plaintiff was being held unlawfully. While Plaintiff alleges that LeBlanc was aware of the Commissioner's Recommendation, (Doc. 5, p. 7), the Commissioner did not recommend that Plaintiff be immediately released. Rather, the Recommendation indicated that certain DPSC officials improperly calculated Plaintiff's release date and failed to account for his 602 days in custody. (Doc. 4-2). Without more information, it is not clear that LeBlanc would have known that

14

Plaintiff should have been released at a prior time. Therefore, the Court finds that LeBlanc is entitled to qualified immunity regarding his alleged direct involvement in Plaintiff's prolonged period of unlawful detention.

However, Hooper and Milligan stand in different shoes. Plaintiff sufficiently alleges that these Defendants *knowingly* prolonged Plaintiff's detention following the issuance of the Recommendation by the Commissioner, which was subsequently adopted by the 19th JDC. (Doc. 4 at ¶ 10). Plaintiff alleges that Hooper and Milligan each received hand-delivered copies of the Recommendation. (*Id.* at ¶ 38). Plaintiff also alleges that Milligan "said she did not have time to look at it and that she did not care what the Commissioner said." (*Id.* at ¶ 38). Plaintiff alleges that Hooper told him to take the matter up with Milligan and that "[t]he Commissioner is not a judge." (*Id.* at ¶ 39). Plaintiff alleges that even after Milligan received a copy of the 19th JDC's Ruling, she stated that "she did not care whether [Plaintiff] was right or wrong, because she was not going to do anything" (*Id.* at ¶ 48), and that when Hooper received a copy of the Ruling, he once again ignored it and told Plaintiff to speak with Milligan. (*Id.* at ¶ 49).

Hooper and Milligan both had a duty to accurately calculate Plaintiff's sentence and to release him when it became clear, as determined by a state judicial officer, that Plaintiff's release was required under Louisiana law. By alleging that they unjustifiably failed to do so, Plaintiff has adequately pleaded that they knowingly and unlawfully prolonged his detention for at least eighty-two days after the issuance of the Recommendation from the Commissioner. Accordingly,

15

Defendants Hooper and Milligan are not entitled to qualified immunity on this claim.

Finally, Plaintiff has provided no support for the argument that he had a clearly established right to have legal counsel or an attorney calculate his release date. Accordingly, Defendants are entitled to qualified immunity on this claim.

## IV.    CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss (Doc. 3) is **GRANTED IN PART**, consistent with the relief set forth in this Order.

**IT IS FURTHER ORDERED** that Plaintiff's state law claims, Plaintiff's official capacity federal law claims, Plaintiff's direct involvement claim against LeBlanc, and Plaintiff's supervisory liability claim against Hooper be and are hereby **DISMISSED**.

**IT IS FURTHER ORDERED** that, in all other respects, Defendants' Motion to Dismiss be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 13th day of September, 2021

**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**